***********
Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Rowell.
 *********** EVIDENTARY RULING
Plaintiff's motion to admit additional evidence filed January 29, 2003 is hereby granted and the Affidavit of plaintiff dated January 28, 2003 is a part of the evidence of record.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter.
2. All the parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The date of the accident was November 26, 1999.
4. Liberty Mutual Fire Insurance Company was the carrier on the risk.
5. Plaintiff's average weekly wage on November 26, 1999 may be determined from an accurate Industrial Commission Wage Chart, Form 22, prepared by defendant-employer.
6. The following Industrial Commission forms were admitted into evidence at the hearing before the Deputy Commissioner:
a. Exhibit 1, Industrial Commission Form 18 filed January 30, 2001
b. Exhibit 1A, Industrial Commission Form 18, amended, filed February 12, 2001
c. Exhibit 1B, a second amendment to the Industrial Commission Form 18 filed August 3, 2001
d. Exhibit 2, Industrial Commission Form 61 filed July 23, 2001
e. Exhibit 3, Industrial Commission Form 33, filed January 30, 2001
f. Plaintiff's Exhibit 3A, Industrial Commission Form 33, amended, filed February 12, 2001
g. Plaintiff's Exhibit 3B, a second amendment to the Industrial Commission Form 33, filed August 3, 2001
h. Exhibit 4, Industrial Commission Form 33R filed July 23, 2001
i. Exhibit 5, photograph of the cart
j. Exhibit 6, plaintiff's employment file (49 pages)
k. Exhibit 7, wage and attendance records (26 pages)
l. Exhibit 10, Cape Fear Valley Medical Center, Dora Franzoni, M.D., Kenneth Oswalt, M.D., Eric Miller, M.D. and Amy Voytovich, M.P.T. (26 pages)
m. Exhibit 11, CAROMED, Family Practice, P.A. and Clinton D. Wilburn, M.D. (32 pages)
n. Exhibit 12, Physicians Total Rehab (2 pages)
o. Exhibit 13, Carolina Neurological Services, P.A. and Carol M. Wadon, M. D. (2 pages)
p. Exhibit 14, Cape Fear Valley Hospital (61 pages)
q. Exhibit 15, Southeaster Regional Rehabilitation Center and Raymond Metzger, P.T. (9 pages)
r. Exhibit 16, Healthsouth Diagnostic Center (2 pages)
s. Exhibit 17, Carolina Imaging Center (1page)
t. Exhibit 18, ProActive Therapy (10 pages)
7. Plaintiff was out of work from March 19, 2000 until August 6, 2000 and from August 16, 2000 until the present. Plaintiff has not returned to work for defendants since August 16, 2000.
8. Plaintiff received short-term disability benefits which were fully funded by the employer. Plaintiff also received long-term disability benefits that were fully funded by the employee.
9. The parties stipulated into evidence the following exhibits at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit #1, the Pre-trial Agreement
b. Stipulated Exhibit #2, a notebook containing Industrial Commission Forms, medical records, and personnel records
c. Stipulated Exhibit #3, Industrial Commission Form 22
d. Stipulated Exhibit #4, three paragraphs depicting cart
e. Stipulated Exhibit #5, employer's statement of long-term disability claim
10. The issues before by the Commission are whether plaintiff sustained an injury by accident to her back on or about November 26, 1999 and, if so, to what compensation, including medical compensation, is plaintiff entitled as a result of her injury.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old and had graduated from high school. Plaintiff began her employment with defendants in January 1991 in Omaha, Nebraska.
2. Plaintiff first worked for defendants in the Omaha, Nebraska store and transferred to the Fayetteville, North Carolina store in 1998. Plaintiff started in February 1999 in the Fayetteville store as an assistant to the store manager and remained in this position for three months. As an assistant to the manager, plaintiff performed filing and ran reports. Plaintiff was then transferred to a position as a human resource support associate in May of 1999. While working as a human resource support associate, plaintiff's direct supervisor was Ms. Cindy Sosa, Human Resource Manager.
3. As a human resource support associate, plaintiff was required to handle scheduling, process payroll, interviewing, filing and general paper work for the human resource department.
4. Plaintiff testified she was coming back from lunch on November 26, 1999 and was facing her locker when she was struck by a metal cart which threw her up against her locker. Plaintiff testified she immediately felt a sharp pain in her lower back and reported the incident to Ms. Sosa who sent her to the asset protection department where she completed an accident report.
5. The accident report indicated plaintiff was struck on the left side by a cart operated by Mr. Ronnie Saenz at 1:46 p.m. Plaintiff worked the remainder of the day.
6. Plaintiff testified she did not seek medical treatment because she had a very high pain tolerance and believed her back condition would improve. Plaintiff had seen a doctor in April 1999 for a strained muscle in her back.
7. Prior to the cart incident plaintiff was a part-time employee and worked an average of 25 regular hours per week from February 1999 through November 1999. Plaintiff usually worked a shift beginning between 8:00 a.m. and 9:00 a.m. and ending between 1:00 p.m. and 2:00 p.m. In December, 1999, after the cart incident occurred, plaintiff's hours increased and she worked an average of 35 hours per week. Plaintiff worked an additional seven hours listed as "other hours." Plaintiff worked out of her regular department during the holiday season to accommodate the store's staffing needs.
8. On December 18, 1999 plaintiff twisted and hurt her left ankle when a ladder she was standing on wobbled and she slipped. Plaintiff filled out an accident report on the accident but did not seek medical care.
9. Plaintiff testified employees were not allowed to take vacation or personal time after Thanksgiving because of the holiday season and if any time was missed from work, the employee was required to provide a medical note. Ms. Sosa testified defendants required medical documentation for absences during the holiday season.
10. On January 7, 2000, plaintiff began working as an in stock specialist. She had worked in this position for two years in defendants' Omaha store. Plaintiff was responsible for taking merchandise counts with a small hand held computer that weighed 3-5 pounds. Plaintiff then used the counts to restock merchandise which could weigh as much as 100 pounds.
11. Plaintiff testified she continued to experience pain throughout December 1999 and with the change in her position in January 2000 her pain increased. Plaintiff testified she continued to believe her condition would improve and did not seek medical treatment.
12. On February 20, 1999, plaintiff experienced pain while at home when she removed a load of laundry.
13. The parties stipulated that plaintiff was out of work from March 19, 2000 to August 6, 2000 and from August 16, 2000 until the time the Pre-Hearing Agreement was signed. The Pre-Hearing Agreement is undated. Plaintiff's pay records show her last day worked as February 18, 2000 and the Employer's Statement of LTD Claim filed with MetLife shows plaintiff last worked on February 22, 2000.
14. Plaintiff was treated by Dr. Clinton D. Wilburn, her family physician, on February 23, 2000 and told Dr. Wilburn she had experienced back pain for two days. Dr. Wilburn took plaintiff out of work on May 11, 2000 through June 22, 2000.
15. Plaintiff was referred to physical therapy by Dr. Wilburn. The March 3, 2000 physical therapy report indicated plaintiff was hit in her lower back by a metal cart on December 1, 1999 and her pain increased two weeks prior when she was removing laundry from a washer.
16. Plaintiff was evaluated by Dr. Carol Wadon at Carolina Neurosurgical Services on March 20, 2000. The history recorded in plaintiff's chart indicates "she does quite a bit of lifting in her job and hurt herself in December loading a washer."
17. Plaintiff was referred to the Cape Fear Valley Medical Center by Dr. Wadon for a pain management protocol. Plaintiff saw Dr. Dora Franzoni on May 23, 2000 and provided a history of pain since December 1999 when a metal cart was pushed into her lower back. Plaintiff reported she had been experiencing a throbbing, sharp, burning pain that was exacerbated with prolonged sitting, standing or walking. Dr. Franzoni indicated in her notes plaintiff was experiencing low back pain without a radicular component and stated plaintiff appeared to have right sacroilitis, possibly right L5-S1 facet syndrome and deconditioning myofascial pain syndrome. Dr. Franzoni recommended physical therapy, trigger point injections and changing plaintiff's medication to longer acting narcotics. Plaintiff declined to take Oxycotin or similar narcotics at that time.
18. A functional capacity evaluation was completed on July 25, 2000 and concluded plaintiff was capable of performing work at the light physical demand level for an 8 hour day and that plaintiff was recovering well from her injury. The functional capacity evaluation stated that plaintiff exhibited minimal symptom/disability exaggeration behavior and nonorganic signs were not present. Plaintiff passed the validity criteria which suggested fair effort and valid results on the test. The functional capacity evaluation further stated symptom exaggeration did not affect results of the test and might be due to normal personality traits, anxiety regarding reinjury or misunderstanding of self-report pain scales.
19. Plaintiff returned to Dr. Carol Wadon on October 24, 2000. Dr. Wadon recommended plaintiff undergo a lumbar myelogram, which was performed on October 24, 2000. Dr. Wadon found no surgical lesions and encouraged plaintiff to continue pain management. Plaintiff was released to the care of Dr. Kenneth Oswalt.
20. plaintiff continued to seek treatment at the pain management clinic at Cape Fear Valley Medical Center with Dr. Oswalt.
21. On March 5, 2001, Dr. Oswalt performed a spinal endoscopy with injection of therapeutic substance and lysis of adhesions. Dr. Oswalt saw plaintiff on March 14, 2001 and felt the surgical procedure goals had been met.
22. Plaintiff made an unsuccessful trial return to work from August 6, 2000 to August 16, 2000.
23. Plaintiff was treated by Dr. Oswalt from July 21, 2000 through April 6, 2001 and Dr. Oswalt performed plaintiff's spinal endoscopy. Dr. Oswalt testified that plaintiff's description of her pain was consistent with both the injury at work and the washer injury. Dr. Oswalt felt both incidents were possible explanations for the cause of plaintiff's symptoms. Dr. Oswalt felt it was possible that plaintiff's back problems started with the cart incident but was not able to determine which event caused plaintiff's injury.
24. Plaintiff had three caudal injections on August 1 and 18, 2000 and on September 5, 2000, as well as an S1 injection on June 7, 2001.
25. Plaintiff was evaluated for physical therapy on June 13, 2001 at Dr. Oswalt's recommendation. Physical therapy was scheduled to review exercises and plaintiff was placed in the pain management clinic's treatment program, which she successfully completed on June 28, 2001.
26. Plaintiff was evaluated by Dr. Richard Osenbach at Duke University Medical Center on August 14, 2001. Dr. Osenbach felt plaintiff had some aberrant pain behavior. After reviewing the radiographic studies, Dr. Osenbach found no evidence of herniated disc, lumbar radiculopathy or a surgical lesion. Dr. Osenbach was unable to determine the cause of plaintiff's symptoms. Dr. Osenbach further found no radiographic abnormality to account for plaintiff's symptoms and felt the intensity of her symptoms was not in proportion with his objective findings on her neurologic examination or radiographic studies. Dr. Osenbach did not recommend further treatment for plaintiff, and felt she was not a candidate for surgery. Dr. Osenbach felt plaintiff's pain had continued beyond what would be expected following her initial injury.
27. Plaintiff was treated by Dr. Robert Wilson at Triangle Orthopaedic Associates on November 5, 2001. Dr. Wilson felt there were "psychosocial factors interfering with physical functioning with work disability issues as well as worker's compensation litigation." Dr. Wilson ordered an MRI which revealed mild degenerative changes at L2-3 and L5-S1 discs with some facet degenerative changes L3 to S1 bilateral. Dr. Wilson recommended an IDET procedure which was performed on February 4, 2002. After the IDET procedure, Dr. Wilson did not recommend any work activities for a 6-12 week period.
28. At his deposition Dr. Wilson felt that if plaintiff had continued pain after the November 26, 1999 incident and if her pain was aggravated by the laundry incident in February 2000, the cart incident could be a significant contributing factor in plaintiff's condition. However, upon being informed by defense counsel that after the November 26, 1999 incident plaintiff received no medical treatment for approximately 90 days, that plaintiff's work hours increased, that her job duties changed from sedentary to a physically demanding job and that she worked without complaints, Dr. Wilson was not able to render an opinion on causation and did not "feel comfortable stating an opinion one way or the other." Dr. Wilson imposed work restrictions of no prolonged sitting or driving, no lifting over 10 pounds, and no repetitive lifting, bending or twisting.
29. Plaintiff testified at the hearing before Deputy Commissioner Young that she was incapable of working and that her current medications did not allow her to think clearly or maintain a general awareness.
30. Ms. Sosa testified plaintiff did not demonstrate any disability, impairment, back symptoms or pain that indicated plaintiff was experiencing back pain in December 1999 through February 2000.
31. Ms. Sosa discussed defendants' light duty return to work program and felt the human resource support associate position fell within the restrictions outlined by the functional capacity evaluation. Ms. Sosa testified defendants were willing to offer plaintiff a position as a human resource support associate if she were willing to accept it, however, Ms. Sosa did not testify that plaintiff had ever been offered a light duty position.
32. Ms. Sam Henke, asset protection manager for defendants, also testified about defendants' light duty work program and stated that light-duty work was available within plaintiff's restrictions. However, Ms. Henke admitted that no light duty position had ever been offered to plaintiff.
33. In August 2002, plaintiff was released to return to light duty work. On September 3, 2002, plaintiff obtained part-time employment with Your Home Connection. She was working for Your Home Connection full time on January 28, 2003 making $9.00 an hour.
34. There is insufficient medical evidence in the record from which to prove by its greater weight that plaintiff sustained a compensable injury as the result of the incident which occurred on November 26, 1999. The greater weight of the medical evidence fails to establish that the accident on November 26, 1999 caused any disability or that plaintiff required any medical treatment related to the accident.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act it must be the result of an accident arising out of and the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. Leather Co.,231 N.C. 477 57 S.E.2d 760 (1950). Plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and the disability for which compensation is sought. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980).
3. Plaintiff did not sustain a compensable injury by accident arising out of and in the course of her employment with defendants on November 26, 1999. N.C. Gen. Stat. § 97-2(6); Anderson v. Motor Co.,233 N.C. 372, 64 S.E.2d 265 (1951).
4. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act for her back condition. N.C. Gen. Stat. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law plaintiff's claim for workers' compensation benefits must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 2nd day of July 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd